# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| **TAMEKIA LIVINGSTON-WILLIS** | **CASE NO.  6:25-CV-00954** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **IBERIA COMPREHENSIVE COMMUNITY HEALTH CENTER INC ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss pursuant to F.R.C.P. Rule 12(b)(6) filed by Defendants, Iberia Comprehensive Community Health Center, Inc. ("ICCHC"), ICCHC Board ("the Board"), and De'Marquis Hamilton, CEO. (Rec. Doc. 11). Plaintiff, Tamekia Livingston-Willis, opposed the Motion (Rec. Doc. 13), and Defendants replied (Rec. Doc. 19). The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the parties' arguments, and for the following reasons, the Court recommends that Defendants' Motion to Dismiss be granted in part and dismissed in part.

## Facts and Procedural History

Plaintiff filed this suit in July 2025 against her former employer, ICCHC, its board, and its current CEO, Hamilton, alleging employment discrimination based on

her gender, retaliation, violations of the Americans with Disabilities Act (ADA) and the Family Medical Leave Act (FMLA), breach of contract, and defamation. (Rec. Doc. 1; 4).

Ordinarily, in ruling on a Rule 12(b)(6) motion, the Court is limited to the allegations of the complaint and any exhibits attached thereto; however, the court may also consider documents attached to the defendant's motion if they are referenced in the complaint and central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007). The court is also permitted to take judicial notice of public records as well as facts which are not subject to reasonable dispute in that they are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011). The Fifth Circuit has also sanctioned consideration of certain documents which were attached to the plaintiff's opposition, where no party questioned the authenticity of the documents and the documents are sufficiently referenced in the complaint. *Walch v. Adjutant Gen.'s Dep't of Texas*, 533 F.3d 289, 294 (5th Cir. 2008). Accordingly, the Court shall consider Plaintiff's allegations (Rec. Doc. 4), Plaintiff's purported employment contract (Rec. Doc. 11-1, attached to Defendants' Motion and referenced in the complaint), Plaintiff's August 13, 2024 termination letter (Rec. Doc. 11-5, attached to Defendants' Motion

and referenced in the complaint), and Plaintiff's EEOC right to sue letter (Rec. Doc. 13-3, attached to Plaintiff's opposition and referenced in the complaint) in order to determine whether Plaintiff has stated a claim. The foregoing documents present the following facts.[1]

Although the factual allegations are poorly drafted, Plaintiff alleges she was hired in September 2008 and later promoted to Human Resources Director. (Rec. Doc. 4, ¶7). In 2024, Hamilton was hired as the new CEO, and Plaintiff was warned not to communicate with the former CEO, Mr. Campbell. (Id.) Thereafter, she alleges she was fired on July 12, 2024 while on FMLA leave due to stress and anxiety. (¶9; 11). While on leave, she alleges she was denied access to her email (¶14) and was later denied the opportunity to collect her belongings from work after her termination (¶13).

She alleges that CEO Hamilton fired ICCHC's compliance officer/general counsel, Harry Thompson, in March 2024 after he (Thompson) investigated a complaint against him (CEO Hamilton). Plaintiff was apparently identified as a witness in Thompson's EEOC charge. (¶10). Otherwise, she alleges that she was

---

[1]     The Court did not consider any emails/texts (Rec. Doc. 11-3; 11-4; 13-1; 13-2; 13-4) or the job description (Rec. Doc. 11-6), unauthenticated documents which are not sufficiently referenced in the complaint. Neither did the Court consider documents at Rec. Doc. 11-2, which, though public records, are irrelevant at this stage of the proceedings and not referenced in the complaint.

subject to a hostile work environment, isolated by CEO Hamilton, and forced to change offices (¶10) and that CEO Hamilton passed by her office without speaking, ignored her questions, and left her out of interviews and meetings regarding hiring new staff (¶12). She filed an EEOC complaint, but the EEOC dismissed the charge and issued a right to sue letter. (Rec. Doc. 13-3). She now asserts causes of action for gender discrimination, hostile work environment, retaliation for exercising her rights under ADA and FMLA, breach of her employment contract, and defamation based on statements that she took something from the company. (Rec. Doc. 4, ¶15).

Defendants contend that Plaintiff was terminated for theft of intellectual property after forwarding company emails to her personal email account. In support of this contention, Defendants attached various emails; however, the purported emails are unauthenticated hearsay and cannot be considered under Rule 12(b)(6). The August 13, 2024 termination letter to Plaintiff, which the Court does consider, states that in July 2024, Plaintiff transferred ICCHC proprietary and confidential documents from her work email to her personal email account in violation of company policy. (Rec. Doc. 11-5). Plaintiff disputes this.

Plaintiff further contends that Defendants' actions breached her employment contract with ICCHC. Defendants attached a Guaranteed Employment Agreement between ICCHC and Plaintiff, executed by former CEO Roderick Campbell. (Rec. Doc. 11-1). Defendants dispute "the validity and enforceability of the agreement

signed by the former CEO in the eleventh hour of his tenure with the organization."
(Rec. Doc. 11-5, p. 1). Plaintiff last asserts a claim for defamation based on
Defendants' alleged statements that she was terminated for stealing from the
company (Rec. Doc. 4, ¶15), possibly referencing the termination letter. Defendants
move to dismiss all of Plaintiff's claims for failure to state claims upon which relief
can be granted.

## Law and Analysis

### I.     Rule 12(b)(6) Standard

The defendant may challenge the complaint for failing to state a claim by
filing a motion to dismiss under F.R.C.P. Rule 12(b)(6). When considering a motion
to dismiss for failure to state a claim, the district court must limit itself to the contents
of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan
Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's
Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-
pleaded facts as true and view them in the light most favorable to the plaintiff. *In re
Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007). Conclusory
allegations and unwarranted deductions of fact are not accepted as true. *Kaiser
Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.
1982); *Collins v. Morgan Stanley*, 224 F.3d at 498. The law does "not require
heightened fact pleading of specifics, but only enough facts to state a claim to relief

that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more …than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

## II.    Title VII Gender Discrimination

In employment discrimination cases, under the *McDonnel Douglas* framework, if the plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the employer to provide a legitimate, non-discriminatory reason for the action. *Haire v. Bd. of Sup'rs of Louisiana State Univ. Agric. & Mech. Coll.,* 719 F.3d 356, 362–63 (5th Cir. 2013). In order to clear the initial hurdle, the plaintiff must show (1) that she is a member of a protected class; (2) that she was qualified for the position sought; (3) she was subject to an adverse employment action; and (4) she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside her class. *Id*. at 363.

The parties do not dispute that Plaintiff, as a female, is a member of a protected class (see *id*) or that her termination constituted an adverse employment action. Plaintiff did not specifically plead allegations regarding her qualifications,

6

but the Court must consider the allegations in Plaintiff's favor and thus interprets the allegations to show that she was qualified. She had served in a human resources capacity since 2008 and was the Human Resources Director at the time of her termination. (Rec. Doc. 4, ¶7).

Otherwise, Plaintiff's allegations fail to show that she was replaced by a man or treated less favorably than similarly situated men. In fact, the complaint does not allege any facts regarding any replacement for her position. She alleges that, because she is female, CEO Hamilton deliberately isolated her and refused to communicate with her, she was told to move offices, kicked out of her company email, and removed from interviews of new hires. "To adequately plead an adverse employment action, plaintiffs need not allege discrimination with respect to an 'ultimate employment decision.' Instead, a plaintiff need only show that she was discriminated against, because of a protected characteristic, with respect to hiring, firing, compensation, or the 'terms, conditions, or privileges of employment.'" *Hamilton v. Dallas Cnty.,* 79 F.4th 494, 506 (5th Cir. 2023). Term, conditions, or privileges of employment entail such quintessential aspects as wages, days, and hours worked. *Id.* at 503. *De minimus* injuries do not suffice. See discussion in *Harrison v. Brookhaven Sch. Dist.,* 82 F.4th 427, 432 (5th Cir. 2023). The alleged acts of changing offices and exclusion from interviews do not constitute actionable adverse employment actions, without allegations of how these acts materially affected a term, condition,

or privilege of her employment. Although being kicked out of company email could conceivably constitute a sufficiently adverse employment action, with specific allegations showing how such action would materially affect a term or condition of employment, the Court declines to hold as much here, especially where Plaintiff failed to meet the similarly situated requirement discussed below.

Plaintiff's allegations also fail to show that similarly situated men in nearly identical circumstances were treated more favorably:

> Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. …The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions.

*Lee v. Kansas City S. Ry. Co.,* 574 F.3d 253, 259–60 (5th Cir. 2009) (citations omitted).

The complaint lacks sufficient allegations to show that similarly situated men were treated more favorably. Ultimately, the conduct which Plaintiff alleges is the sort of "petty slight, minor annoyance, and simple lack of good manners" which are insufficient to show discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548

U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006). Plaintiff failed to state a claim for gender

discrimination.

### III.    <u>Hostile Work Environment</u>

> In order to establish a hostile working environment claim, [the plaintiff] must prove: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race [or gender]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. For harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

> In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (cleaned up; citations

omitted). See also *Long v. Eastfield Coll.,* 88 F.3d 300, 309 (5th Cir. 1996), citing

same elements regarding gender-based claims.

The "mere utterance of an epithet which engenders offensive feelings in an

employee" and "simple teasing, offhand comments, and isolated incidents (unless

extremely serious)" are insufficient to constitute harassment. *Shepherd v.

Comptroller of Pub. Accts. of State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999)

(cleaned up), quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367,

370 (1993) and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2283 (1998).

In support of her hostile work environment claim, Plaintiff alleges that CEO Hamilton avoided her at work, passed by her office without speaking, ignored her questions, and left her out of interviews and meetings regarding hiring new staff. (Rec. Doc. 4, ¶12). Such allegations do not rise to the level of harassment contemplated by Title VII. Indeed, hostile work environment claims typically entail aggressive behavior, such as statements and conduct. Compare e.g. *Shepard, supra* (no hostile work environment where co-worker made inappropriate statements and occasional unwanted touching). Here, CEO Hamilton's alleged behavior in ignoring Plaintiff was merely passive, with no allegations of pervasive, ongoing egregious conduct. Plaintiff failed to state a hostile work environment claim.

## IV.    <u>Title VII Retaliation</u>

To establish a *prima facie* case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007), *abrogated by Hamilton v. Dallas Cnty.,* 79 F.4th 494 (5th Cir. 2023).[2]

"A 'protected activity' under Title VII is 'opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII.'" *Newell v. Acadiana Plan. Comm'n Inc*., 637 F. Supp. 3d 419, 432–33 (W.D. La. 2022). "Title VII thus covers two distinct types of protected activity: (1) opposition to any practice rendered unlawful by Title VII (the 'opposition clause'), and (2) making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII (the 'participation clause')." *Id*., citing *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 274, 129 S.Ct. 846 (2009).

Plaintiff alleges with scarce details that she was identified as a witness in former general counsel Harry Thompson's EEOC charge. (Rec. Doc. 4, ¶10). Plaintiff does not allege any facts about whether she opposed any conduct rendered unlawful under Title VII, or that she was terminated or suffered any other adverse employment action *because* of any protected activity. She conclusorily alleges that

---

[2]    *Hamilton* held that "[t]o adequately plead an adverse employment action, plaintiffs need not allege discrimination with respect to an 'ultimate employment decision.' Instead, a plaintiff need only show that she was discriminated against, because of a protected characteristic, with respect to hiring, firing, compensation, or the 'terms, conditions, or privileges of employment.'" *Hamilton,* 79 F.4th at 506.

she was subject to a hostile work environment, such as being isolated by CEO Hamilton and forced to change offices (Rec. Doc. 4, ¶10). She did not allege how the alleged isolation and office change constituted a "term, condition, or privilege of employment" in order to show she suffered an adverse employment action (see *Hamilton, supra*) because of her alleged identification as a witness in Thompson's EEOC complaint. Plaintiff's sparse allegations do not state a claim for retaliation.

## V.    ADA Discrimination and Retaliation

The Americans with Disabilities Act (ADA) protects disabled employees from discrimination due to certain disabilities.

> Under § 12112(a) of the ADA, an employer is generally prohibited from discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. The ADA provides protections for individuals who have a disability, had a disability, or are regarded as having a disability. The ADA also mandates that "regarded as" status "shall not apply to impairments that are transitory and minor." The ADA defines a "transitory impairment" as one "with an actual or expected duration of 6 months or less."

*Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020).

Ultimately, in order to prevail on a claim for violation of the ADA, the plaintiff must show that (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job either with or without reasonable accommodations; and (3) he has suffered from an adverse employment action because of his disability. *Kemp v. Holder,* 610 F.3d 231, 235 (5th Cir.2010).

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." *Id.*, citing 42 U.S.C. § 12102(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* citing § 12102(2)(A). To satisfy the causation standard, the "'discrimination need not be the sole reason for the adverse employment decision, [but] must actually play a role in the employer's decision making process and have a determinative influence on the outcome.'" *Pinkerton v. Spellings,* 529 F.3d 513, 519 (5th Cir.2008).

Plaintiff alleges only that she suffered from stress and anxiety. (Rec. Doc. 4, ¶15). She did not allege any facts regarding the extent and effects of her alleged condition, or how her condition limits her ability to perform major life activities and thus fails to show that she suffered from a qualifying disability. See *Aucoin v. Kennedy,* 355 F. Supp. 2d 830, 837 (E.D. La. 2004) (finding the plaintiff failed to state an ADA claim where she alleged "only that she suffers from stress and anxiety caused by having to work with the individuals at the Fire District who are harassing her, not that she suffers from generalized anxiety, stress, and depression that precludes her work at other jobs."). Additionally, her allegations fail to show that

she was terminated *because of* her alleged stress and anxiety. Rather, her allegations purport to show that she was terminated for taking leave, as better analyzed under FMLA.

The ADA also protects disabled employees from retaliation under the statute. The ADA prohibits an employer from "discriminating against any individual because such individual has opposed any act or practice made unlawful by the ADA or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA." *Lyons*, 964 F.3d at 303–04. When a plaintiff presents indirect evidence of unlawful retaliation under the ADA, the court applies the *McDonnel Douglas* burden-shifting scheme discussed above. *Id*. The plaintiff must first show that: (1) she engaged in an activity protected by the ADA, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action. *Id*. "Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Id*.

Plaintiff alleges that she was fired while on leave on July 12, 2024, and that CEO Hamilton did not approve of her taking leave. (Rec. Doc. 4, ¶9; 11). She alleges that she suffered from stress and anxiety, but CEO Hamilton "resented her for taking time off to heal." (¶15). As held above, the complaint is devoid of any factual allegations that she suffered a qualifying disability. Nor did she allege any facts

14

linking her termination to the fact that she took leave, or any other conduct protected by the ADA—she alleges only that she was fired while on leave, a claim better addressed under FMLA, discussed below. Otherwise, her allegations purport to link her termination to Title VII gender discrimination and/or her alleged participation as a witness in another former employee's EEOC claim. The complaint is wholly lacking in sufficient allegations to state any claim under the ADA.

## VI.   **FMLA Retaliation**

The Fifth Circuit recently explained the FMLA as follows:

> The FMLA aims to provide job security and reasonable leave for employees with "serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4). The law "requires covered employers to grant covered employees up to twelve weeks of unpaid leave for certain qualifying reasons," *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018), including "a serious health condition that makes the employee unable to perform the functions of the position of such employee," 29 U.S.C. § 2612(a)(1)(D). The FMLA also protects an employees' "right to be reinstated to [her] previous position or an equivalent position upon [her] return from FMLA leave." *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 306 (5th Cir. 2021); *see* 29 U.S.C. § 2614(a)(1).

*Way v. City of Missouri City*, 133 F.4th 509, 523 (5th Cir. 2025).

Plaintiff alleged that she was fired while on FMLA leave for anxiety and depression. Although she did not allege facts supporting that she was entitled to or qualified for FMLA leave, and Defendants dispute her entitlement, at this stage of the proceedings, the Court accepts Plaintiff's allegations as true.

In order to establish a *prima facie* case of retaliation under the FMLA, the employee must show: 1) she was protected under the FMLA; 2) she suffered an adverse employment action; and 3) she was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA. *Hunt v. Rapides Healthcare Sys.,* 277 F.3d 757, 768 (5th Cir.2001).

> When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the "temporal proximity" between the FMLA leave, and the termination. *Wilson v. Lemington Home for the Aged,* 159 F.Supp.2d 186, 195–96 (W.D.Pa.2001) (explaining that a causal connection existed between the FMLA leave and the termination when the plaintiff was terminated while on FMLA leave and reasoning that the close proximity in time between FMLA leave and the adverse action establishes the necessary causal connection). Moreover, the plaintiff does not have to show that the protected activity is the only cause of her termination. *Long v. Eastfield Coll.,* 88 F.3d 300 n. 4 (5th Cir.1996) (holding that the plaintiff was not required to show that the protected activity was the "sole factor" motivating adverse employment action). The plaintiff is, however, required to show that the protected activity and the adverse employment action are not completely unrelated. *Medina v. Ramsey Steel Co.,* 238 F.3d 674, 684 (5th Cir.2001).

*Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.,* 446 F.3d 574, 583 (5th Cir. 2006).

Defendants argue that Plaintiff failed to allege that she was on approved FMLA leave and that her FMLA leave was not, in fact, approved. Of course, this is a factual issue which must be resolved in Plaintiff's favor. Defendants further rely on the termination letter which states that Plaintiff was terminated for violation of

company policy regarding personal emails; however, Plaintiff disputes the stated reason for her termination. Plaintiff's allegations are just enough at this stage to state a claim for FMLA retaliation. She alleges that she took leave (which the Court must assume was proper at this stage) due to anxiety and depression, that CEO Hamilton was unhappy that she had taken leave, and that she was terminated while on leave. (Rec. Doc. 4, ¶9; 15). Factual issues regarding ICCHC's reasons for the termination must be resolved at later stages in proceedings.

## VII.  <u>State Law Claims</u>

Plaintiff asserts state law claims for breach of an employment contract (the enforceability of which Defendants dispute) and for defamation, seemingly based on her employer's reasons for termination as set forth in the termination letter. Defendants urge the Court to dismiss these state law claims for lack of supplemental jurisdiction once federal law claims are dismissed. Because one federal law claim survives, the Court declines to dismiss Plaintiff's state law claims at this stage under 28 U.S.C. §1367(c)(4).

Defendants further move to dismiss Plaintiff's defamation claim for lack of sufficient factual allegations:

> In order to prevail on a defamation per se claim, a plaintiff must prove the following four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. By contrast, defamation by innuendo occurs when one publishes *truthful* statements of fact and those truthful facts carry a false

17

defamatory implication about another. In other words, defamatory meaning can be insinuated from an otherwise true communication.

The publication element of both claims does not require that the defamatory comment be published to the general public, but is satisfied by communication to a person other than the one defamed. Under Louisiana law, communication between officers and agents of the same corporation, and in relation to their duties for the corporation cannot be construed as communication to a third party for purposes of establishing the publication element of a defamation action. Notably, failure to prove any element invalidates a defamation claim.

*Williams v. Genesis Energy, LLC*, No. CV 20-35-JWD-EWD, 2021 WL 1227873, at *10–11 (M.D. La. Mar. 31, 2021) (cleaned up; citations omitted).

Plaintiff alleges that CEO Hamilton told others she was terminated because she took from the company, which she alleges was untrue. (Rec. Doc. 4, ¶2; 15). Plaintiff does not allege that she suffered any damages due to the alleged defamation, such as damage to reputation or inability to obtain another job, but she generally claims in her prayer for relief compensatory damages, including as back pay, punitive damages, attorneys' fees, expenses, etc. (Rec. Doc. 4, p. 6). Defendants refute the allegations, but the Court cannot consider factual defenses on the merits at this early stage. Although the timing of the allegedly defamatory statements can be reasonably inferred based on the totality of the complaint, the allegations do not show to whom such alleged statements were made other than to state CEO Hamilton "told others." Such statements made within the organization would not qualify, because "[i]n Louisiana, statements between employees, made within the course and

scope of their employment, are not statements communicated or publicized to third persons for the purposes of a defamation claim." *Brackens v. Stericycle, Inc.,* 829 F. App'x 17, 23 (5th Cir. 2020), quoting *Williams v. United Parcel Serv., Inc.*, 757 F. App'x 342, 345 (5th Cir. 2018). Plaintiff states in her opposition that Defendants made the allegedly false statements to "people in the public" and that "[i]n a small town where the Plaintiff lives, these false accusations…make it difficult for the Plaintiff to overcome and find employment." (Rec. Doc. 13, p. 20). Such allegations would suffice and cure the complaint's deficiency.

### VIII.  <u>Plaintiff's Request to Amend</u>

Plaintiff requested an opportunity to amend the complaint to more sufficiently allege facts in support of her claims. (Rec. Doc. 13, p. 22). "District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner which will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 329 (5th Cir. 2002). The court in its discretion may disallow amendment if the amendment would be futile. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). "Futility is determined under Rule 12(b)(6) standards, meaning an amendment is considered futile if it would fail to state a claim upon which relief could be granted." *Legate v. Livingston*, 822 F.3d 207, 211 (5th

19

Cir. 2016). "[A] district court is not obligated to grant a futile motion to amend, for instance, when 'the plaintiff has already pleaded his best case.'" *Hernandez v. W. Texas Treasures Est. Sales, L.L.C.,* 79 F.4th 464, 468 (5th Cir. 2023), quoting *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009).

Regarding her claims for gender discrimination, hostile work environment, retaliation, and ADA violations, Plaintiff's opposition duplicates many of the complaint's allegations and provides no new factual allegations that, if added to the complaint, would affect the Court's ruling. Thus, the Court finds that these alleged facts constitute Plaintiff's best case, and Plaintiff should not be permitted to amend to assert such claims. Regarding her defamation claim, as discussed above, Plaintiff should be permitted to amend to assert further factual allegations regarding publication of the allegedly defamatory statements to third parties.

## Conclusion

For the foregoing reasons, the Court recommends that Defendants' Motion to Dismiss (Rec. Doc. 11) be granted in part and denied in part. The motion should be granted to dismiss Plaintiff's Title VII discrimination, hostile work environment, retaliation, and ADA claims. The motion should be denied to the extent Defendants seek to dismiss Plaintiff's FMLA retaliation and breach of contract claims and Plaintiff should be permitted an opportunity to amend the complaint to better allege facts in support of her defamation claim. Any amended complaint shall exclude

20

claims for Title VII discrimination, retaliation, hostile work environment, and ADA violations.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 13th day of November, 2025.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

21